IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DIANA RESENDIZ,

  Plaintiff,

   v.

OFFICER DEMETRIUS CHRISTIAN,
badge #28346, in his individual
capacity, et al.,

  Defendants.

CIVIL ACTION FILE
NO. 1:24-CV-2452-TWT

## OPINION AND ORDER

This is a civil rights action. It is before the Court on Defendant Demetrius Christian's Motion for Summary Judgment [Doc. 46] and Motion for Independent Medical Examination and Stay [Doc. 38]. For the reasons set forth below, the Court GRANTS in part and DENIES in part Christian's Motion for Summary Judgment [Doc. 46] and GRANTS in part and DENIES in part his Motion for Independent Medical Examination and Stay [Doc. 38].

## I. Background[1]

Defendant Demetrius Christian is a Clayton County police officer who issued a citation to Plaintiff Diana Resendiz for driving without a license. (Def.'s Statement of Undisputed Material Facts ("Def.'s SUMF") ¶ 3

---

[1] The operative facts on the Motion for Summary Judgment are taken from the parties' Statements of Undisputed Material Facts and the responses thereto. The Court will deem the parties' factual assertions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B).

[Doc. 46-1].) He issued the citation at Resendiz's place of employment, a gas station. (*Id.* ¶ 4.) Another officer then arrested Resendiz and transported her to a police precinct. (*Id.* ¶ 5; Pl.'s Statement of Undisputed Material Facts[2] ("Pl.'s SUMF") ¶ 5 [Doc. 47-1].) When she returned to her workplace, Christian was still present. (Def.'s SUMF ¶ 12; Pl.'s SUMF ¶ 12.)

The circumstances that followed are highly disputed. In general, Resendiz argues that Christian used his status as a police officer and involvement with her citation to obtain sexual favors, and Christian argues that their interactions were entirely consensual and unrelated to his job or the citation. The parties do agree that the following events occurred: Christian asked for Resendiz's phone number; the pair subsequently exchanged text and Facebook messages over a period; Resendiz performed oral sex on Christian at least once; and an incident occurred in the bathroom of Resendiz's workplace. (*See* Christian Dep. at 49:4–13 [Doc. 46-3] (regarding Resendiz's phone number); Pl.'s SUMF ¶¶ 11–12 (same); Def.'s SUMF ¶ 13, 16, 20 (regarding exchanging messages, oral sex, and the bathroom).) But the parties describe these events differently, as evidenced by each party's deposition testimony. The record contains screenshots of some of the parties' text and Facebook

---

[2] Resendiz's Statement of Undisputed Material Facts combines both her response to Christian's Statement of Undisputed Material Facts and her Statement of Additional Undisputed Material Facts.

messages,[3] but it does not contain any other evidence regarding the parties' in-person interactions.

Beginning with the request for Resendiz's number, Resendiz testified that she believed it was related to her citation, as he supposedly stated, "I'm going to need your number for this." (Apr. 16, 2025, Resendiz Dep. at 58:1–59:1 [Doc. 46-5].) Christian testified that the pair had been "flirting" and that he "thought she was cool" and "friendly." (Christian Dep. at 45:24–46:14 [Doc. 46-3].)

Regarding their subsequent messages, Resendiz testified that she "very quickly" learned that Christian was seeking sex and that Christian made their power imbalance clear. (Apr. 16, 2025, Resendiz Dep. at 286:2–7 ("This was not romantic. This was not anything like a casual dating. . . . It was just strictly he wanted sex."); *id.* at 140:8–16, 286:13–287:5 (regarding Resendiz's feelings of intimidation); *see also id.* 237:12–14, 238:4–6, 265:17–24.) For example, when Resendiz noted in a message that Christian "had left the scene" after finding her without a license, Christian responded: "That was my way of helping you, not coming to do the paperwork. I got wrote [up] for you." (*Id.* at 241:25–242:3.) Resendiz testified that she felt pressured to respond to Christian and do what he wanted because he was involved with her initial citation and was aware

_____

[3] A fuller picture of the parties' text and Facebook messages is unavailable, as many of the messages appear to have been deleted or lost. (*See* Christian Dep. at 90:8–23; Apr. 16, 2025, Resendiz Dep. at 17:8–18:19.)

that she was still driving to work without a license. (Apr. 16, 2025, Resendiz Dep. at 264:24–265:2 ("I was just scared to get pulled over again."); *see also id.* at 270:2–22 (testifying that the two never expressly discussed a quid pro quo but that Christian would "g[et] upset with [her]" if she rejected his advances).) She further testified that Christian would repeatedly make statements such as "I'm just trying to help you" and told her he would not arrest her if she drove to him. (Apr. 16, 2025, Resendiz Dep. at 268:15–269:11; June 27, 2025, Resendiz Dep. at 85:3–15.) In one text message, for example, Christian wrote: "Pull up and grab him then leave" followed by "I won't arrest u." (Certificate of Serv., Ex. 3 ("Message Screenshots"), at 15 [Doc. 48-3].)

In contrast, Christian testified that he understood he could have been called as a witness for Resendiz's then-pending criminal prosecution for driving without a license but stated he was just "trying to get [ ] a quickie." (Christian Dep. at 34:20–35:5, 131:1–132:18.) He also testified that he did not threaten to arrest her and that any "help" he referenced was about providing Resendiz with laundry money "and things of that sort" rather than his help as a police officer. (Christian Dep. at 62:8–10, 66:5–7, 113:10–114:1.)

According to Resendiz, she repeatedly made excuses to not see him, (*id.* at 239:13–17), but he kept "showing up to [her] job" in his patrol car and "demanding" that she perform oral sex on him or engage in other acts, (*id.* at 239:6–11, 283:6–17). She testified that Christian "always" arrived in uniform

during these sexual acts, though she informed him it made her "uncomfortable." (Apr. 16, 2025, Resendiz Dep. at 260:5–6, 261:9–14; 287:10–14, 80:14–16; 127:21–25.) Christian testified that he could not recall being in uniform during oral sex. (Christian Dep. at 127:5–128:3.)

Resendiz and Christian eventually engaged in certain sexual acts. The parties agree that Resendiz performed oral sex on Christian on at least one occasion. (Def.'s SUMF ¶ 16.) Resendiz additionally described one occasion in which the pair engaged in penetrative sex, but Christian denies this fact. (Apr. 16, 2025, Resendiz Dep. at 77:12–83:22; Christian Dep. at 189:18–20.) Resendiz testified that both incidents occurred in a parking lot at 738 Morrow Road. (Apr. 16, 2025, Resendiz Dep. at 289:15–22.) The record contains text messages in which Christian gave Resendiz a Morrow Road address and shared when he was located there. (Message Screenshots at 38–39.)

The parties additionally agree that there was a separate in-person encounter in the bathroom at Resendiz's workplace. They agree that Christian entered the bathroom first and that Resendiz later "entered the bathroom, saw Christian there, and then [ ] 'just left.'" (Def.'s SUMF ¶¶ 20–21.) They also agree that the bathroom door remained unlocked and that Christian did not stand between Resendiz and the door. (*Id.* ¶ 23.) Each party's testimony differs from there. According to Resendiz, Christian suggested over text that he would show up at her workplace for oral sex and directed her to "say the bathroom is

out of order." (Apr. 16, 2025, Resendiz Dep. at 60:8–61:16; *id.* at 62:3–8.) Resendiz supposedly told him it was a "very bad idea" and that "[t]here's cameras." (*Id.* at 61:6–8.) Christian showed up at her workplace shortly thereafter in uniform and in his patrol car and entered the bathroom. (Def.'s SUMF ¶ 20; Christian Dep. at 86:3–19 (agreeing that he arrived in uniform with his K-9 vehicle).) At some point afterward, Resendiz supposedly entered the bathroom to "see what he was doing," saw him with his pants down, and heard him express "want[ing] oral sex right there," but then she "just left" to return to the cash register. (Apr. 16, 2025, Resendiz Dep. at 61:13–16, 64:24–65:1; *see also id.* at 65:10–13 ("[H]e was not using the bathroom. He was not even at the toilet. He was . . . just waiting for me."); *id.* at 61:22 ("[I went into the bathroom] to see if he was being serious, like, is this a real thing, like, what was going on. But it was never with the intention of me wanting to perform oral sex . . .").) In contrast, Christian testified about the events in the following way:

> I went to [Resendiz's] job and [ ] asked . . . if she had a restroom. And I went into that restroom, I used the restroom. The toilet thing was broken, and I told her about that. I stood outside the restroom. Me and her never went inside the restroom together.[4]

(Christian Dep. at 85:6–11. *But see* Def.'s SUMF ¶¶ 20–21 (admitting later that Resendiz did enter the bathroom).) He further testified that he did not

---

[4] The Court notes that, although Christian testified here that they were not inside the bathroom together, he later admitted in his statement of undisputed material facts that they were.

6

expose himself to her and that she only went inside the bathroom to "fix" the toilet. (*Id.* at 85:1–4, 85:21–86:2.)

At some point after these interactions, Resendiz testified that she blocked Christian's number and changed her workplace and home address but that he reached out to her over Facebook using the name "Lamont Woods." (Apr. 16, 2025, Resendiz Dep. at 43:23–44:21, 46:13–16; *see also* Christian Dep. at 112:10–115:9 (confirming his Facebook pseudonym and outreach.) She testified that she confronted Christian in an attempt to end all communication, including by stating: (1) "Look, what do you want? Huh? You think you're just going to come and fuck me and that's it? I got enough problems with the cops . . . ," (Apr. 16, 2025, Resendiz Dep. at 267:1–5); and (2) "Nah, you ain't trying to help me. All you're trying to do is [have sex with] me. I ain't with it," (*id.* at 268:8–12). Christian testified that he independently blocked her after she threatened to share screenshots of their messages with his police department. (Christian Dep. at 144:1–146:12.)

The First Amended Complaint asserts § 1983 claims regarding substantive due process (Count I), equal protection (Count II), invasion of privacy (Count III), unreasonable search and seizure (Count IV), and cruel and unusual punishment (Count V). It also alleges Georgia tort claims for extortion (Count VI), assault and battery (Count VII), violation of public duty (Count VIII), and emotional distress (Count IX), as well as Georgia

constitutional claims for unreasonable search and seizure and due process (Count X).

## II.  Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

Upon a motion for good cause and appropriate notice, a court "may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1), 35(a)(2)(A). According to Rule 35(a), such an order "must specify the time, place, manner, conditions, and scope of the examination, as well as the person . . . who will perform it." Fed. R. Civ. P. 35(a)(2)(B). Courts in this district construe Rule 35(a) "liberally [ ] in favor

of granting discovery." *Higgins v. Bass*, 2021 WL 8567908, at *2 (N.D. Ga. June 7, 2021) (quoting *Postell v. Amana Refrigeration, Inc.*, 87 F.R.D. 706, 707 (N.D. Ga. 1980)).

### III.    Discussion

### A. Section 1983 Federal Claims

Section 1983 provides a procedure to redress violations of federally protected rights; it does not establish any substantive rights. *Foster v. Streetman*, 683 F. Supp. 3d 1372, 1378 (N.D. Ga. 2023) (citations omitted). To establish a § 1983 claim, Resendiz must show that she was deprived of a federal or constitutional right by a person acting under color of state law. *Almand v. DeKalb Cnty.*, 103 F.3d 1510, 1513 (11th Cir. 1997) (citing *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992)).

In briefing, Resendiz concedes her § 1983 claims for invasion of privacy (Count III) and cruel and unusual punishment lack. (Count V). (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. for Summ. J., at 13, 17.) The Court agrees that Christian is entitled to summary judgment on those claims, which will be granted accordingly. Her remaining § 1983 claims are for substantive due process under the Fourteenth Amendment (Count I), equal protection under the Fourteenth Amendment (Count II), and unreasonable search and seizure under the Fourth Amendment (Count IV).

Christian seeks summary judgment on these claims, arguing that he did not act under color of state law or violate Resendiz's constitutionally protected rights under the Fourteenth or Fourth Amendments. The Court addresses the color of state law argument, followed by qualified immunity, the Fourth Amendment, and finally the Fourteenth Amendment.

### 1. Color of State Law

"A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state," as opposed to "acting only as a private individual." *Almand*, 103 F.3d at 1513 (citing *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1522 (11th Cir. 1995)). Not every act by a police officer is state action. *See Lindke v. Freed*, 601 U.S. 187, 197 (2024) ("[The plaintiff] cannot hang his hat on [the defendant's] status as a state employee."). "The distinction between private conduct and state action turns on substance, not labels: Private parties can act with the authority of the State, and state officials have private lives and their own constitutional rights." *Lindke*, 601 U.S. at 197; *Myers v. Bowman*, 713 F.3d 1319, 1329 (11th Cir. 2013) (citation omitted); *see also Pike v. Budd*, 133 F.4th 74, 83 (1st Cir. 2025) ("Private action 'outside the line of duty and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law." (citation omitted)).

The Eleventh Circuit's opinion in *Griffin v. City of Opa-Locka*, 261 F.3d 1295 (11th Cir. 2001), is instructive. There, a city manager sexually harassed a city employee on multiple occasions—including by making sexual comments in his office and informing her that he gave her a "bigger raise" to get a dinner date—then arranged to drive her home after a work-related function, purported to help bring her equipment from the function inside, and ultimately raped her. *Id.* at 1299–1300. Evaluating both the assault and recurring harassment, the Eleventh Circuit concluded that the city manager acted under color of law because he "utilize[d] [his] authority to create the opportunity for or to facilitate a sexual assault." *Id.* at 1305 ("[T]he entire pattern of abuse and harassment against [the Plaintiff] that eventually culminated in her [alleged assault] is relevant to [the] color of law analysis."). The Court distinguished the facts of *Griffin* from those of other cases holding that state employees do not act under color of law when "official duties merely facilitate[ ] the meeting of or development of a relationship" and the tort is committed "on [their] own time and wholly independent of [their] official duties." *Id.* at 1306. A key fact in *Griffin* was that the city manager used the pretense of work to harass and rape his employee. *See id.* at 1305–06; *see also J.V.M. v. Town of Palm Beach Shores*, 2017 WL 4476373, at *6 (S.D. Fla. Oct. 6, 2017) (denying a motion to dismiss where the plaintiff alleged the police officer acted under color of state law because he used the pretense of helping the plaintiff address a domestic

11

violence situation to meet with and sexually assault the plaintiff).

A second instructive case—and one on which Christian primarily relies—is *Butler v. Sheriff of Palm Beach County*, 685 F.3d 1261 (11th Cir. 2012). In *Butler*, a corrections officer came home to find her daughter and her daughter's friend in a state of undress. *Id.* at 1263. Still in uniform and using her work-issued pistol, the corrections officer held the stranger at gunpoint, threatened to kill him if he did not follow orders, handcuffed him, and called her supervisor to ask what charges could be brought, among other things. *Id.* at 1263–64. The Eleventh Circuit held that the corrections officer did not act under color of state law, reasoning that the misconduct was "not accomplished because of her status as a corrections officer" but because she was "an enraged parent." *Id.* at 1267. It further reasoned that any enraged parent may have pulled a legally owned gun against a home invader, attempted to detain the invader, and called law enforcement authorities to inquire whether the stranger acted unlawfully. *See id.* at 1267–68 (explaining that items such as the work-issued handcuffs were "incidental" rather than "essential" to the conduct).

After Christian cited Resendiz for driving without a license and obtained Resendiz's phone number, a series of messages and in-person interactions followed. The parties have presented portions of their messages as evidence, but other than the parties' own testimony, there is no direct evidence of what

transpired during the parties' in-person interactions. Throughout these interactions, Resendiz testified that Christian demanded oral and penetrative sex from her, assured her he wouldn't arrest her when she met him, repeatedly told Resendiz that he was "helping" her in relation to driving without a license, only met her while in uniform, repeatedly parked outside her work in his squad car and in uniform, and knew at all relevant times that she was undocumented and could not obtain a license. (Apr. 16, 2025, Resendiz Dep. at 14:19–15:10, 50:2–20, 75:4–21, 239:6–11, 241:25–252:3, 260:5–6, 268:15–269:11, 283:6–17; Message Screenshots, at 15; June 27, 2025, Resendiz Dep. at 85:3–15.) At least two of these supposed statements occurred over text and have been entered into the record. In one text, Christian stated that he was "helping" Resendiz by "[n]ot coming to do the paperwork." (Message Screenshots, at 58.) Resendiz testified that this text was about her citation paperwork and in response to a message from her about the fact that Christian "had left the scene" after the traffic stop. In a second text, Christian stated "I won't arrest you" after stating "[p]ull up and grab him then leave." (Message Screenshots, at 15.) Meanwhile, Christian asserts all encounters were consensual, denies making statements about Resendiz's citation or not arresting her, denies learning about her immigration status, and says his help referred to sending her money for costs such as laundry. (Christian Dep. at 62:8–10, 66:5–20, 113:10–114:1, 144:21–23.)

Considering the totality of the circumstances and drawing all inferences in the light most favorable to Resendiz, the court finds a genuine dispute of material fact as to whether Christian was acting under color of state law during his interactions with Resendiz. The testimony and text messages about not arresting Resendiz and about "helping" her are key. When this evidence is juxtaposed with Christian's persistent requests for sex, a reasonable jury could infer that Christian was making veiled threats to arrest or cite Resendiz if she did not acquiesce to his demand for sexual favors. In making such a finding, a jury could further rely on Resendiz's testimony that Christian arrived in uniform during all their encounters, knew Resendiz continued to drive without a license to work and to meet him, and periodically parked outside her work in his patrol car. It could also rely on Christian's testimony that he understood he could have been called as a witness during Resendiz's then-pending criminal prosecution.

This case is therefore closer to *Griffin* than *Butler*, as a reasonable jury could find that Christian continuously invoked his apparent power as a police officer to coerce Resendiz into engaging in sexual acts—in effect, using police-related business to extract sexual favors to which Resendiz would not have otherwise agreed. *See Griffin*, 261 F.3d at 1304 (involving a city manager who invoked his position to arrange a personal ride home for the plaintiff, insisted on helping her bring her work-related equipment into the home, and

reminded her of his position before raping her); *see also Rogers v. City of Little Rock*, 152 F.3d 790, 798 (8th Cir. 1998) (holding that a jury could find the police officer acted under color of state law when he cancelled a request to tow the plaintiff's car following a traffic stop, followed the plaintiff to her house in his patrol car, told her "she owed him a favor," and sexually assaulted her); *Romano v. Young*, 378 Fed. App'x 172, 174–75 (3d Cir. 2010) (finding a genuine dispute of material fact as to whether a police officer acted under color of state law due to the plaintiff's testimony that the officer suggested she would get in "trouble" and her brother would end up in jail if she did not comply). For these reasons, Christian is not entitled to summary judgment on the issue of whether he was acting under color of state law. His Motion [Doc. 46] will be denied as to this issue.

### 2.  Qualified Immunity

Christian next argues that, if the Court finds he acted under color of state law, he is entitled to qualified immunity on all federal claims and official immunity on the state claims. (Br. in Supp. of Def.'s Mot. for Summ. J., at 24–25.) To raise a qualified immunity defense, a defendant must establish that he acted within his discretionary authority. *Bridges v. Poe*, 155 F.4th 1302, 1313 (11th Cir. 2025) (citation omitted). Conduct falls within an official's discretionary authority if the conduct was "(1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Est. of*

15

*Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018) (citation omitted). If the defendant shows that his conduct was a discretionary function, the plaintiff must then establish that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Aguirre v. Seminole Cnty.*, 158 F.4th 1276, 1296 (11th Cir. 2025) (citation omitted).

The defense of qualified immunity fails here. Christian has not met his initial burden of showing that his actions fall within his discretionary authority. Engaging in sexual acts with a person while off duty does not constitute "performing a legitimate job-related function." *See Davenport*, 906 F.3d at 940. And Christian does not claim that he was performing any official police-related functions when he would surveille Resendiz's workplace. Even assuming he did perform any discretionary police functions, using one's authority as a police officer to coerce an individual to perform sexual acts violates a clearly established constitutional right under the Fourteenth Amendment, as discussed further below. The Court thus denies Christian's Motion [Doc. 46] as to qualified immunity.

### 3. Fourth Amendment (Count IV)

Resendiz alleges an unreasonable search and seizure under the Fourth Amendment due to Christian's repeated visits to her work, the bathroom incident, and the sexual assault. As an initial matter, while the First Amended

Complaint briefly mentions an "unreasonable search," (1st Am. Compl. ¶¶ 33, 87), none of Resendiz's allegations or evidence points to any search. Rather, Resendiz's focus appears to be solely on an alleged unlawful seizure. (*See* 1st Am. Compl. ¶ 89; Pl.'s Resp. Br. in Opp'n to Def.'s Mot. for Summ. J., at 14–17.) To the extent Resendiz alleges an unreasonable search, the Court grants summary judgment in favor of Christian.

As to unlawful seizure, the Court also grants summary judgment in favor of Christian. "A seizure occurs when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *May v. City of Nahunta*, 846 F.3d 1320, 1327 (11th Cir. 2017) (citation modified). "An encounter between a police officer and a citizen becomes a seizure when 'a reasonable person would not feel free to terminate the encounter." *Id.* (citation modified). "[T]he touchstone of a seizure is the restraint on a person's freedom of movement through means intentionally applied." *West v. Davis*, 767 F.3d 1063, 1072 (11th Cir. 2014) (citation modified) (quoting *Brendlin v. California*, 551 U.S. 249, 254 (2007)) (finding the police officer's intentional grabbing of the plaintiff's wrist, which restrained her movement, effected a seizure).

First, Resendiz has presented no evidence that Christian's repeated visits to her place of employment "terminate[d] or restrain[ed] [her] freedom of movement" in any way. *See Brendlin*, 551 U.S. at 254 (2007) (citation omitted). Resendiz apparently remained free to leave or stay at work as she saw fit, as

any reasonable person would have felt in the same circumstance.

Second, the bathroom incident did not constitute an unlawful seizure. Although the parties disagree on what occurred in the bathroom, they both agree that Resendiz entered the bathroom and "just left" upon seeing Christian. (Def.'s SUMF ¶ 21; *see also id.* ¶ 23 ("Christian never stood between Resendiz and the bathroom door.").) Here, a reasonable person would have felt free to leave and, in fact, Resendiz did leave. *See United States v. Dolomon*, 569 Fed. App'x 889, 892 (11th Cir. 2014) ("Absent the use of physical force, a seizure requires both a show of authority and '*submission* to that assertion of authority.' An attempted seizure, without actual submission, is not a seizure for Fourth Amendment purposes." (citations omitted)).

Third, the Court is persuaded that the sexual acts between Christian and Resendiz, if coerced, would not constitute an unlawful seizure. Several courts in this circuit have found that unwanted sexual contact initiated by an officer *within* the context of an arrest or detention can amount to a Fourth Amendment violation—most commonly as excessive force during a search or seizure. *See Brown v. Bellinger*, 2019 WL 5311592, at *1–4 (S.D. Fla. Oct. 18, 2019) (acknowledging that unwanted touching of an individual's genitals during a body search could amount to a Fourth Amendment violation, but ultimately granting summary judgment because the touching was "de minimus" rather than excessive); *Hicks v. Moore*, 422 F.3d 1246, 1253–54 (11th

Cir. 2005) (acknowledging that unwanted touching "towards a detainee during a seizure" could amount to a Fourth Amendment violation, but finding summary judgment appropriate because the touching was "too slight"). But courts in this circuit have generally dismissed Fourth Amendment claims when the unwanted sexual contact occurs *outside* the context of an arrest or detention.

In *Doe v. City of Miami Gardens*, 389 F. Supp. 3d 1118 (S.D. Fla. 2019), for example, the Southern District of Florida granted summary judgment on a Fourth Amendment claim where a police officer had offered a woman a ride home after responding to a wellness check but had driven the woman to a hotel instead to grope and sexually proposition her. *Id.* at 1124–26. The court held that the officer did not seize the plaintiff because, while the officer "initiate[d] unwanted sexual contact," he did not intend to or actually "restrain Plaintiff's freedom of movement." *Id.* at 1133; *see also id.* (explaining further that the plaintiff stopped the advances). The same could be said in the present case. While the plaintiff in *Miami Gardens* brought only one federal claim under the Fourth Amendment, the court suggested that a Fourteenth Amendment claim may have been more suitable. *Id.* at 1128 nn.4–5.

Other courts in this circuit have dismissed similar Fourth Amendment claims and expressly stated that sexual assault by an officer outside an arrest or detention is more appropriately evaluated under the Fourteenth

Amendment. *See, e.g.*, *Weeks v. Colquitt Cnty.*, 2025 WL 897531, at*7 (M.D. Ga. Mar. 24, 2025) ("[A]llegations that [ ] an officer sexually assaulted or harassed an individual 'outside of the context of an arrest' are properly analyzed under the Fourteenth Amendment."); *Thomas v. Roberts*, 2025 WL 1018619, at *2 (M.D. Ga. Apr. 4, 2025) ("Courts limit the application of the Fourth Amendment to sexual assaults perpetrated during an arrest or detention." (citations omitted)); *see also Walker v. Heard*, 2016 WL 6699417, at *9 (N.D. Ala. Nov. 15, 2016) (holding that the plaintiff—who alleges a sexual assault "in the context of the initial arrest"—states a claim under the Fourth Amendment, rather than the Fourteenth Amendment's Due Process Clause).

While the Eleventh Circuit has not directly opined on this issue, the Court feels compelled by the body of existing case law within the Eleventh Circuit to grant summary judgment on Resendiz's Fourth Amendment claim because the alleged nonconsensual sexual acts occurred in a setting far removed from the scene of Resendiz's original traffic stop and citation. Resendiz does not identify—and the Court is not aware of—any case within the Eleventh Circuit that has upheld a Fourth Amendment violation in like circumstances. And a majority of circuits have taken a similar approach, preferring to assess such claims under the Fourteenth Amendment. *See, e.g.*, *Fontana v. Haskin*, 262 F.3d 871, 882 (9th Cir. 2001) ("Sexual misconduct by a police officer toward another generally is analyzed under the Fourteenth

Amendment; sexual harassment by a police officer of a criminal suspect during a continuing seizure is analyzed under the Fourth Amendment."); *Jones v. Wellham*, 104 F.3d 620, 622, 628 (4th Cir. 1997) (characterizing a police officer's conduct—in which the officer pulled over the plaintiff for driving while intoxicated, offered to drive her home, but then drove her to a parking lot to rape her—as a Fourteenth Amendment violation rather than a Fourth Amendment violation "[b]ecause the harm inflicted did not occur in the course of an attempted arrest or apprehension of one suspected of criminal conduct"); *see also Hess v. Garcia*, 72 F.4th 753, 759 (7th Cir. 2023) (collecting cases finding similarly in the First, Fifth, Second, Fourth, Fifth, and Eighth Circuits).

That being said, the Court is aware that the Seventh Circuit's forceful opinion in *Hess* takes issue with this approach. *Id.* at 759–67. Relying on Supreme Court precedent holding that the "Fourth Amendment's protection extends beyond the sphere of criminal investigations," the *Hess* court preserved a Fourth Amendment claim at the motion-to-dismiss stage that involved unwanted physical sexual contact by a police officer toward a high school student participating in an educational "ride along." *Id.* (quoting *City of Ontario v. Quon*, 560 U.S. 746, 755–56 (2010)). The Seventh Circuit is correct that this proposition is well settled: The Fourth Amendment "guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive

acts by officers of the Government," without regard to whether the government actor is investigating crime or performing another function." *Quon*, 560 U.S. at 755–56 (citing *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 613–14 (1989)); *O'Connor v. Ortega*, 480 U.S. 709, 714–15 (1987) ("[T]he Fourth Amendment . . . applie[s] to the conduct of governmental officials in various civil activities. Thus, we have held in the past that the Fourth Amendment governs the conduct of school officials, building inspectors, and Occupational Safety and Health Act inspectors. . . . [B]ecause the individual's interest in privacy and personal security suffers whether the government's motivation is to investigate violations of criminal laws or breaches of other statutory or regulatory standards, it would be anomalous to say that the individual . . . [is] fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior." (citation modified)); *Lenz v. Winburn*, 51 F.3d 1540, 1547 n.7 (11th Cir. 1995) ("[T]he Fourth Amendment's protection unquestionably extends beyond criminal investigations to civil and administrative contexts.").

While it may be the case that case law across the circuits does not adequately grapple with this Supreme Court precedent, this Court will decline to depart from the majority of circuits at this time. The Court therefore grants summary judgment in favor of Christian on the Fourth Amendment claim in Count IV.

### 4. Fourteenth Amendment's Equal Protection (Count II)

Resendiz alleges an equal protection claim for discrimination based on sex/gender, national origin, and immigration status. (1st Am. Compl. ¶¶ 69–75.) The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It is "essentially a direction that all persons similarly situated should be treated alike." *Eknes-Tucker v. Governor of Ala.*, 80 F.4th 1205, 1226 (11th Cir. 2023) (citation omitted). The first step a plaintiff must satisfy in establishing an equal protection claim is that he or she "suffered purposeful or intentional discrimination" on account of a protected characteristic. *Glenn v. Brumby*, 724 F. Supp. 2d 1284, 1297 (N.D. Ga. 2010); *see also Parks v. City of Warner Robins*, 43 F.3d 609, 616 (11th Cir. 1995) ("[P]roof of discriminatory intent or purpose is a necessary prerequisite to any Equal Protectional Clause claim." (quoting *Hernandez v. New York*, 500 U.S. 352, 359–60 (1991)). A state actor intentionally discriminates when he or she "select[s] or reaffirm[s] a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc.*, 682 F.3d 1293, 1297 (11th Cir. 2012) (citation omitted).

The Court grants summary judgment in favor of Christian on Resendiz's equal protection claim. Resendiz cannot prove intentional discrimination

based on national origin, immigration status, or sex/gender. Regarding national origin and immigration status, Resendiz asks this court to infer intentional discrimination based on her testimony that Christian (1) was aware of her immigration status and (2) frequently parked outside her workplace in a manner that reminded her that he could arrest her for driving without a license (due to her immigration status). (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. for Summ. J., at 9 (citing Apr. 16, 2025, Resendiz Dep. at 14:23–15:3, 15:25–16:6).) But Resendiz cannot escape summary judgment based on Christian's awareness of her immigration status and mere visits to her workplace, even if accepted as true. She must present evidence that Christian targeted Resendiz *because of* her national origin or immigration status. Because she cannot do so, the Court grants summary judgment on Count II to the extent it alleges an equal protection claim based on national origin and immigration status.

Resendiz's intentional discrimination based on sex/gender fails for similar reasons. The only evidence that Resendiz presents on this topic is Christian's testimony that he is heterosexual. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. for Summ. J., at 9 (citing Christian Dep. at 142:14–143:5).) That is insufficient to establish that Christian targeted Resendiz *because of* her sex/gender. Resendiz cites no evidence that Christian pursued or pressured other women, and, in fact, Christian testifies that Resendiz "is the only person

whom [he] ha[s] charged with a crime that [he] went on to have a sexual relationship with." (Christian Dep. at 142:11–14.) It is just as likely that Christian pursued Resendiz because he thought she was a uniquely "cool" individual—as he suggests—as it is that he pursued her because of her sex/gender. Furthermore, Resendiz cites no authority for the proposition that a defendant's sexual orientation is adequate proof of an intentional sex discrimination claim. Christian is thus entitled to judgment as a matter of law on the sex discrimination claim.

The Court notes it is aware of two unpublished district court opinions in this Circuit that have construed sexual harassment by an individual police officer as an equal protection violation. *Weeks v. Colquitt Cnty.*, 2025 WL 897531, at *1–2, 8 (M.D. Ga. Mar. 24, 2025) (denying dismissal of an equal protection claim because the plaintiff alleged that a sheriff's deputy used the guise of an investigation to take photos of her in an undressed state, touched her, and made sexual comments for his personal sexual gratification); *Thomas v. Roberts*, 2025 WL 1018619, at *1, 3 (M.D. Ga. Apr. 4, 2025) (putting the parties on notice that the Equal Protection Clause was the only "vehicle" for the plaintiff's allegations of "unsolicited verbal and physical sexual advances" against a police officer).

But the underlying reasoning in those cases is not persuasive. They make the jump from the fact that sexual harassment occurred in one instance

to the conclusion that the harassment constitutes intentional sex discrimination. Relying on out-of-circuit precedent and without further analysis, both *Weeks* and *Thomas* concluded that sexual harassment by a state official violates the Equal Protection Clause and that sexual harassment occurs when a state official "abuses his governmental authority to further his own sexual gratification." *Id.* at *8 (quoting *Shepherd v. Robbins*, 55 F.4th 810, 817 (10th Cir. 2022)). But sexual harassment does not automatically amount to sex discrimination, as one may sexually harass a person without intending to discriminate on the basis of sex. *See C.W. ex. rel. Doe v. Smith*, 739 F. Supp. 3d 1007, 1022 (N.D. Ala. 2024), *appeal argued*, No. 24-12547 (11th Cir. Nov. 20, 2025) ("[T]he Equal Protection Clause does not provide a *general* right against harassment or assault; it provides a right against being treated differently because of a protected characteristic[ ] like race or sex."). While *Weeks* and *Thomas* cite some in-circuit cases to support equating the two concepts, those cases do not stretch that far. *See Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1507–08 (11th Cir. 1995) (holding that the plaintiffs presented sufficient evidence of intentional sex discrimination within an Alabama mental health department because several women testified about their poor treatment and harassment in the workplace compared to their male counterparts); *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1340 (11th Cir. 1999) (noting, when asking whether

women are a protected class under 42 U.S.C. § 1985(3), that the Equal Protection Clause "protects women from sex discrimination by persons acting under color of state law"); *Hill v. Cundiff*, 797 F.3d 948, 956–65, 978–80 (11th Cir. 2015) (holding that a jury could find certain school administrators discriminated on the basis of sex by failing to maintain adequate sexual harassment and recordkeeping policies despite known sexual misconduct and failing to update those policies following the rape of a student on school grounds).

### 5. Fourteenth Amendment's Substantive Due Process (Count I)

Resendiz treats Count I as a claim for substantive due process under the Fourteenth Amendment, (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. for Summ. J., at 10–12), so the Court will treat it as such. The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To establish a substantive due process claim against a state official, a plaintiff must show "(1) a deprivation of a constitutionally protected interest, and (2) that the deprivation was the result of an abuse of governmental power sufficient to raise an ordinary tort to the stature of a constitutional violation." *Littlejohn v. Sch. Bd. of Leon Cnty.*, 132 F.4th 1232, 1239 (11th Cir. 2025) (quoting *Hoefling v. City of Miami*, 811 F.3d 1271, 1282 (11th Cir. 2016)). The conduct of the state official must be "arbitrary, or conscious shocking, in a constitutional

sense." *Doe v. Braddy*, 673 F.3d 1313, 1318 (citation modified) (quoting *White v. Lemacks*, 183 F.3d 1253, 1259 (11th Cir. 1999)). While "liability for negligently inflicted harm is categorically beneath the constitutional due process threshold . . . .[,] conduct deliberately intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level. *County of Sacramento v. Lewis*, 523 U.S. 833, 834 (1998).

The Court first holds that a reasonable jury could find that Christian used his apparent authority as a police officer to coerce Resendiz into performing unwanted oral and penetrative sex, which would amount to rape or sexual assault. As explained above, Resendiz testified that she refused sex on multiple occasions but that she ultimately agreed to certain sexual acts due to Christian's persistent intimidation and veiled threats, which carried the weight of Christian's status as a police officer. (*See* Apr. 16, 2025, Resendiz Dep. at 67:5–21, 79:23–80:10; June 17, 2025, Resendiz Dep. at 59:9–60:2, 111:1–12.) She also testified that, when she attempted to refuse Christian, he would become "noticeably upset." (Apr. 16, 2025, Resendiz Dep. at 79:25–80:6.) This testimony is sufficient to create a genuine dispute of material fact as to whether the sexual acts were performed under coercion or via consent.

Sexual assault of this kind, when perpetrated by a state official acting under color of state law, would amount to conscience-shocking behavior and

violate the substantive due process right to bodily integrity.[5] The Eleventh Circuit has not expressly upheld such a right, but district courts in this circuit have done so on various occasions.[6] *See, e.g.*, *Thompson v. Albany Area Cmty. Serv. Bd.*, 620 F. Supp. 3d 1347, 1353, 1364 (M.D. Ga. 2022) (denying summary judgment on a substantive due process claim where a plaintiff testified that a state social service worker used his authority to physically "reach down [the plaintiff's] pants" and "put her hand on his groin and pulled down his pants" in a closet); *Romero v. City of Clanton*, 220 F. Supp. 2d 1313, 1315–16 (M.D. Ala. 2002) (finding a substantive due process "right to be free from sexually motivated physical assaults," where a police officer stopped the male plaintiff, "drove [him] to a remote location, exposed himself, and attempted to sodomize [him]").

The parties' briefs cite little to no case law on this topic, but the Court is further persuaded by a majority of other circuits that have upheld a

---

[5] The Court cautions that it does not hold that all forms of sexual assault and sexual harassment violate a substantive due process right. *See DeMarcus v. Univ. of S. Ala.*, 133 F.4th 1305, 1310, (11th Cir. 2025) (finding that a university coach's actions did not shock the conscience when they involved, among other things, allegedly pinching her students' butts, requiring hugs, sending inappropriate texts, and engaging in other "sexual conduct").

[6] Resendiz purports to have identified two cases in which the Eleventh Circuit has found a substantive due process right "not to be sexually abused by a state official acting under color of law," but the Court does not rely on those cases. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. for Summ. J., at 10.) Those cases merely assume—for appeal purposes and without further analysis—the existence of such a right. *Doe v. School Board of Broward Cnty.*, 604 F.3d 1248, 1268 (11th Cir. 2010); *Hartley v. Parnell*, 193 F.3d 1263, 1266 (11th Cir. 1999).

substantive due process right to be free from sexual assault by a police officer acting under color of law. *See, e.g.*, *Rogers v. City of Little Rock*, 152 F.3d 790, 797 (8th Cir. 1998) (holding that a police officer who acts under color of state law to rape a plaintiff has participated in conscience-shocking behavior that violates the substantive due process right to bodily autonomy); *Tyson v. Sabine*, 42 F.4th 508, 520 (5th Cir. 2022) ("It is obvious that the right to bodily integrity forbids a law enforcement officer from sexually abusing a person by coercing them to perform nonconsensual physical sex acts for his enjoyment."); *Fontana v. Haskin*, 262 F.3d 871, 882 & n.7 (9th Cir. 2001) (holding that the defendant police officer was not entitled to judgment as a matter of law on the plaintiff's substantive due process claim since inappropriate touching and sexual harassment is so "egregious" that it "shocks the conscience"); *Hess v. Garcia*, 72 F.4th 753, 766 (7th Cir. 2023) ("An officer's sexual assault while acting under color of law is conscience-shocking."); *Jones v. Wellham*, 104 F.3d 620, 628 (4th Cir. 1997) (holding that a police officer who rapes an individual outside the context of an arrest violates "the substantive due process right . . . not to be subjected by anyone acting under color of state law to the wanton infliction of physical harm"); *United States v. Morris*, 494 Fed. App'x 574, 581 (6th Cir. 2012) ("[T]he right to not be raped by a law enforcement officer lies at the core of the rights protected by the Due Process Clause." (citation omitted)).

For these reasons, the Court denies summary judgment on Count I. A reasonable jury could rely on the available testimony to find that Christian raped or sexually assaulted Resendiz under color of state law, and sexual assault of this kind would amount to a "deprivation of a constitutionally protected interest" under the Fourteenth Amendment's substantive due process clause. *See Littlejohn*, 132 F.4th at 1239 (quoting *Hoefling*, 811 F.3d at 1282).

### B. Georgia Tort and Constitutional Claims

#### 1. Official Immunity

Christian's official immunity defense against the state law claims fails for the same reasons that his qualified immunity defense fails—he was not performing a discretionary police act. *See Everson v. Dekalb Cnty. Sch. Dist.*, 344 Ga. App. 665, 667 (2018) ("Official immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without willfulness, malice, or corruption.").

#### 2. Extortion (Count VI)

Christian is entitled to summary judgment on Count VI. Although extortion is a criminal offense under O.C.G.A. § 16-8-16(a), Georgia law does not create a private cause of action in tort for extortion. *Rolleston v. Huie*, 198 Ga. App. 49, 50 (1990), *overruled on other grounds by*, *Sewell v. Cancel*, 295

Ga. 235, 239 n.2 (2014). Resendiz concedes this point in briefing. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. for Summ. J., at 18.).

### 3. Assault and Battery (Count VII)

In Georgia, "[a]ny violent injury or illegal attempt to commit a physical injury upon a person is a tort." O.C.G.A. § 51-1-14. "[A]n actual touching is not a necessary element," as a plaintiff need only prove "an intention to commit an injury, coupled with an apparent ability to do so." *Wallace v. Stringer*, 250 Ga. App. 850, 853 (2001) (citations omitted).

The Court denies Christian's Motion for Summary Judgment as to Count VII. According to Christian, Resendiz has failed to present evidence that he caused any "violent injury" or "physical harm" to her or otherwise intended to do as much. (Br. in Supp. of Def.'s Mot. for Summ. J., at 19–20; Reply Br. in Supp. of Def.'s Mot. for Summ. J., at 9–10.) The Court disagrees. Christian's focus on the criminal statutes rather than tort law does him a disservice. A reasonable jury could conclude that Christian intended to illegally commit a physical injury, which is all that is required to establish the tort of assault and battery. O.C.G.A. § 51-1-14. As described above, Resendiz has presented testimony that Christian coerced her to perform certain sexual acts and that she did not consent to any sexual acts between the two of them. Unwanted touching constitutes an unlawful physical injury in Georgia. O.C.G.A. § 16-6-22.1 (criminalizing "intentional [ ] physical contact with the intimate

parts of the body of another person without the consent of that person");
*Newsome v. Cooper-Wiss, Inc.*, 179 Ga. App. 670, 672 (1986) (quoting *Mims v. Boland*, 110 Ga. App. 477, 477–78 (1964)) (noting that an unlawful touching constitutes a physical injury in Georgia); *Vasquez v. Smith*, 259 Ga. App. 79, 81 (2003) (holding that unwanted touching constitutes an actionable claim for assault and battery).

### 4. Breach of Public Duty (Count VIII)

O.C.G.A. § 51-1-7 makes actionable the violation of a defendant's public duties where a plaintiff has suffered "special damage" not shared by the public. Resendiz alleges that Christian breached his public duties pursuant to O.C.G.A. § 17-4-23 by "subjecting [Resendiz] to unlawful demands to engage in sodomy" and "impos[ing] additional conditions of her pre-trial release."[7] (1st Am. Comp. ¶¶ 108–09.) In relevant part, O.C.G.A. § 17-4-23 provides that "[a] law enforcement officer may arrest a person accused of violating any law . . . governing the . . . licensing . . . of motor vehicles . . . by the issuance of a citation." O.C.G.A. § 17-4-23(a)(1), (b).

The Court denies Christian's Motion for Summary Judgment as to this breach of public duty claim. Viewing all facts in the light most favorable to

---

[7] Resendiz also alleges that Christian breached his public duties pursuant to O.C.G.A. § 17-4-28, but the Court finds that provision inapplicable because it concerns criminal warrants. No such warrant was issued in this case.

Resendiz, the Court finds that a reasonable jury could find that Christian breached his public duties by coercing Resendiz to perform certain sexual acts in connection with her traffic stop and citation. These allegedly coerced acts constitute "special damage" incurred by Resendez and not shared by the public.

### 5. Emotional Distress (Count IX)

To establish a claim for the intentional infliction of emotional distress, a plaintiff must show that "(1) defendants' conduct was intentional or reckless; (2) defendants' conduct was extreme and outrageous; (3) a causal connection existed between the wrongful conduct and the emotional distress; and (4) the emotional harm was severe." *Abdul-Malik v. AirTran Airways, Inc.*, 297 Ga. App. 852, 856 (2009) (citation omitted). "[E]xtreme and outrageous conduct" is conduct that is "beyond all possible bounds of decency" and "utterly intolerable in a civilized community." *Id.* (quoting *Biven Software v. Newman*, 222 Ga. App. 112, 113–14 (1996)). Emotional harm arises to a "severe" level when "no reasonable [person] could be expected to endure it." *Peoples v. Guthrie*, 199 Ga. App. 119, 121 (1991) (quoting *Bridges v. Winn-Dixie Atlanta, Inc.*, 176 Ga. App. 227, 230 (1985)).

The Court denies Christian's Motion for Summary Judgment as to Count IX. In seeking to dismiss Resendiz's emotional distress claim, Christian argues that his conduct was not "extreme and outrageous" and that Resendiz's emotional distress is "not sufficiently severe." (Br. in Supp. of Def.'s Mot. for

Summ. J., at 23.) The Court finds neither argument persuasive. First, if it is true that Christian sexually harassed and assaulted Resendiz on multiple occasions, that conduct satisfies the standard for "extreme and outrageous conduct" for purposes of emotional distress damages. *See Se. Sec. Ins. Co. v. Hotle*, 222 Ga. App. 161, 163 (1996) (affirming the denial of the defendant's motion for a directed verdict on the intentional infliction of emotional distress claim where the plaintiff provided evidence of repeated sexual harassment in the workplace); *Troncalli v. Jones*, 237 Ga. App. 10, 10–12, 14–15 (1999) (affirming the denial of the defendant's motion for a directed verdict where the defendant repeatedly and inappropriately touched the plaintiff in a sexual manner and followed the plaintiff); *see also Johnson v. White*, 989 F.3d 913, 915 n.1 (11th Cir. 2021) ("[A]ll sexual conduct is egregious.").

Second, if Resendiz's testimony about her injuries is true, they would rise to a level sufficient to establish a claim for the intentional infliction of emotional distress. Resendiz testified that she experienced anxiety, depression, delusions, paranoia, hyperventilation, and stress and that she was ultimately prescribed medication for these symptoms. (Apr. 16, 2025, Resendiz Dep. at 91:13–96:9, 296:24–298:17.) A reasonable jury could rely on the available testimony to support Resendiz's emotional distress claim. The Court finds Christian's case law to the contrary unpersuasive. Christian relies on *Witter v. Delta Airlines, Inc.*, 966 F. Supp. 1193 (N.D. Ga. 1997), to assert that

such distress is not severe. (Br. in Supp. of Def.'s Mot. for Summ. J., at 22–23.) In *Witter*, a court in this district found that symptoms of "anxiety, sleeplessness, overeating, diarrhea and headaches" were not sufficiently severe to justify a claim for emotional distress. *Id.* at 1201. But Resendiz's claimed injuries were more severe in nature from those in *Witter*, as they include clinical depression, delusion disorder, and treatment via medication. Injuries of this kind have been held sufficient to establish a claim for emotional distress. *See, e.g.*, *Howerton v. Harbin Clinic, LLC*, 333 Ga. App. 191, 208–09 (2015) (denying summary judgment where the plaintiff sought counseling for stress, anxiety, depression; experienced physical manifestations of distress such as alopecia and migraines; and was prescribed medication); *see also Troncalli*, 237 Ga. App. at 11 (characterizing the plaintiff's shingles, nausea and vomiting, depression, and psychological counseling as "severe emotional distress"); *Jefferson v. Houston Hosps., Inc.*, 336 Ga. App. 478, 485 (2016) (noting that whether the plaintiff sought medical treatment "is a factor that is considered in determining the severity of th[e] distress," and affirming the denial of summary judgment in part because the plaintiff did not seek treatment).

### 6. Georgia Constitution (Count X)

Resendiz alleges Georgia constitutional claims for substantive due process, [8] unreasonable search and seizure, and cruel and unusual punishment. Ga. Const. art. I, § I, paras. I, XIII, XVII. These state constitutional provisions are similar to their federal constitutional counterparts. *See State v. Turnquest*, 305 Ga. 758, 769–70 (2019) (regarding due process); *Olevik v. State*, 302 Ga. 228, 234 & n.3 (2017) (regarding unreasonable search and seizure); *Dawson v. State*, 274 Ga. 327, 328 (2001) (regarding cruel and unusual punishment). Where, as here, a plaintiff does not argue that the state protections are greater than the federal ones, the Court "decline[s] to consider such a distinction." *See Turnquest*, 305 Ga. at 770.

Here, Resendiz merely reincorporates her arguments regarding the federal constitution, so her state constitutional claims must fail to the same extent the federal claims do. The Court therefore grants summary judgment as to Resendiz's claims for unreasonable search and seizure and for cruel and unusual punishment and denies summary judgment as to her claim for substantive due process.

---

[8] Like with her federal claim, Resendiz frames her due process claim as one only of substantive due process. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. for Summ. J., at 22–23.)

## C. Independent Medical Examination

Christian moves for an independent medical examination (IME) of Resendiz by Dr. Steve Shindell, a licensed psychologist. (Br. in Supp. of Def.'s Mot. for Indep. Med. Examination, at 6.) In his motion, he requests an in-person examination within the Northern District of Georgia within two weeks from the date of this order. (*Id.* at 7.) He argues that Resendiz's mental condition is "in controversy," as required by Rule 35(a)(1), because she seeks damages for anxiety and depression caused by the alleged sexual harassment and assault. (*Id.* at 4–5.) And he further argues that an IME is probative because Resendiz has been diagnosed with "delusional disorder," which Christian believes may be relevant to the accuracy of Resendiz's testimony and may be an independent cause of the alleged injuries. (*Id.* at 2–3.) Christian notes that Resendiz's treating physician, Dr. Rahul Vanjani, testified that Resendiz suffers from delusion disorder, anxiety, and depression but "acknowledged that he was unable to fully evaluate Plaintiff's mental health history or determine the duration of her condition due to lack of access to her complete records." (*Id.* at 4.)

Resendiz concedes that her mental condition is in controversy but advances two other arguments. She argues that no good cause exists to submit to an IME because her available mental health records and Dr. Vanjani's testimony are adequate. (Pl.'s Resp. Br. to Def.'s Mot. for an Indep. Med.

Examination, at 3–4.) Should the Court order an IME, she requests that it be performed virtually due to the hardship of travelling to this district from Rhode Island and that it exclude a "drug test or inquiry into matters designed to embarrass" her." (*Id.* at 2–7.)

In reply, Christian agrees to a remote examination under the conditions that (1) Resendiz may not later object to or move to exclude the IME results or Dr. Shindell's testimony "on the basis of the IME having taken place via remote means, rather than in person," and (2) "[a] person designated by counsel for Christian shall be physically in the room with Plaintiff for the duration of the remote IME, in order to establish a secure chain of custody of questionnaire items and any other documents brought to, created at, or completed at the examination at the discretion of the examiner." (Reply Br. in Supp. of Def.'s Mot. for Indep. Med. Examination, at 2.) Christian also notes that he does not request a drug test and that Resendiz failed to clarify which matters would be "designed to embarrass" her. (*Id.* at 3.)

Finding good cause, the Court hereby orders Resendiz to submit to a remote independent medical examination by Dr. Shindell within two weeks of the date of this order. The parties agree that Resendiz's mental condition is in controversy and, "[t]ypically, the fact that the defendant has access to the plaintiff's medical records and an opportunity to depose his or her treating physician does not preclude the court from allowing a defendant to conduct an

independent medical examination." *Howard v. Wal-Mart Stores East, LP*, 2021 WL 2638461, at *2 n.1 (N.D. Ga. May 13, 2021) (citation omitted). Christian is therefore entitled to have an independent, licensed psychologist evaluate Resendiz's mental condition. The Court is further persuaded that a remote examination would sufficiently address Christian's concerns while obviating the need for Resendiz to travel out of state, given her childcare and work obligations.

The manner and scope of the evaluation will be as follows: Dr. Shindell will conduct a detailed clinical interview to gather Plaintiff's psychiatric, medical, and family history, along with an understanding of her social and occupational functioning. He will assess whether Plaintiff's beliefs are delusional. He will assess whether Plaintiff meets the criteria for a delusional disorder or another condition that involves psychotic symptoms. He will rule out other medical causes contributing to the symptoms. He will assess for co-occurring symptoms to distinguish delusions from other mental health conditions. He will conduct a mental status examination to observe her appearance, behavior, mood, speech, thought processes, insight, and judgment.

The conditions of the examination will be as follows: As proposed in Christian's motion, Christian "will pay for all costs associated with Dr. Shindell's medical examination so long as Plaintiff arrives at her appointment on time and completes the required examination." (Def.'s Mot. for Indep. Med.

Examination, at 8.) The examination shall not include any drug testing, which Christian admits he does not request and which Resendiz opposes. The Court declines to allow defense counsel or plaintiff's counsel (or their representatives) to be present during the remote examination, as "the attendance of an attorney . . . during a mental examination is not typically necessary or proper." *See Gibson v. Walgreen Co.*, 2008 WL 746845, at *2 (M.D. Fla. Mar. 18, 2008) (citation modified); *Okwen v. Am. Maritime Officers Plan*s, 2015 WL 5771808, at *3 (S.D. Fla. Oct. 2, 2015) ("Indeed, courts . . . have disapproved of counsel's presence during such examination.").

## IV.  Conclusion

For the reasons set forth above, the Court GRANTS in part and DENIES in part Defendant Demetrius Christian's Motion for Summary Judgment [Doc. 46]. The Motion is granted as to the § 1983 claims for equal protection (Count II), invasion of privacy (Count III), unreasonable search and seizure (Count IV), and cruel and unusual punishment (Count V); the state law claim of extortion (Count VI); and the state constitutional claim (Count X) to the extent it alleges claims for unreasonable search and seizure and cruel and unusual punishment. It is denied as to all other relief requested therein.

Additionally, the Court GRANTS in part and DENIES in part his Motion for Independent Medical Examination and Stay [Doc. 38]. In granting the Motion, the Court orders Plaintiff Diana Resendiz to submit to an

independent medical examination by Dr. Steve Shindell, to be conducted virtually within two weeks of the date of this Order and in accordance with the manner, conditions, and scope described in this Order. The Motion is denied as to all other relief requested therein.

SO ORDERED, this ___12th___ day of March, 2026.

THOMAS W. THRASH, JR.
United States District Judge